LUTHER GILES v. TRI-STATE ERECTORS AND LIBERTY MUTUAL INSURANCE COMPANY

No. 7421IC521

(Filed 2 October 1974)

Master and Servant §§ 72, 93— workmen's compensation — injury to foot not before Commission — motion to reconsider

> Where claimant stipulated that the issue before the Industrial Commission in a workmen's compensation proceeding was disfigurement and the amount of permanent partial disability of his right arm, plaintiff introduced into evidence statements of a physician with respect to injury to his right foot, plaintiff appealed the award for disfigurement to the Full Commission and stated in his notice of appeal that all other grounds for appeal were waived and abandoned, The Full Commission on its own motion ordered an examination of claimant to determine the amount of additional permanent partial disability to his right arm, and the physician at the subsequent hearing testified with respect to permanent partial disability of claimant's right foot, the question of permanent partial disability of claimant's right foot was not properly before the Commission, and the Commission did not err in the denial of claimant's motion to reconsider for the purpose of making an award for permanent partial disability of claimant's right foot.

APPEAL by plaintiff from final order of the Industrial Commission, filed 21 December 1973. Heard in the Court of Appeals 27 August 1974.

This is a case arising under the North Carolina Workmen's Compensation Act in which an employee was injured on 23 April 1970 when a bar joist dropped on his head. Liability was admitted, and compensation benefits were paid for temporary total disability and for 10% permanent partial disability of the right arm.

On 11 July 1972, a hearing was held before Deputy Commissioner Barbee at which time it was stipulated by the parties that "the issue is disfigurement and the amount of permanent partial disability to the arm". At that hearing it was also stipulated that certain reports from doctors could be received into evidence as "being what the doctors would say if they were called to testify". Among those documents was a report entitled "Return note H9 2 791 12/18/70, GILES, Luther" and a letter to defendant's carrier dated 18 March 1971 both signed by Dr. James R. Urbaniak. The return note, after discussing the amount

of permanent partial disability assigned to the right upper extremity, contains the following:

> "His main complaint today is paresthesias of the plantar aspect of his right foot. He states this has been present since he returned to consciousness following his accident. He apparently made no note of this previously, but examination today does reveal evidence of posterior tibial nerve compression behind the right malleolus. On percussing the nerve, he has sensation shooting out the bottom of his foot of 'pins and needles' type of feeling. On compression of the vascular system just above the malleolus, he has some reproduction of the sensations. He has normal sensation on the plantar aspect of the foot, however. With a tournaquet placed around the calf and inflated to 110 mm produced no symptoms at 2 minutes, but when it was released, he had paresthesias on the plantar aspect of his foot. He has good dorsalis and posterior tibial pulses. There is a very slight amount of swelling in the posterior tibial compartment on the right.
>
> I believe this man has symptoms of a tarsal tunnel syndrome or compression of the posterior tibial nerve secondary to scar in all probabilty a result of the blow to this region during his accident.
>
> Nerve conduction times are done on the right and left lower posterior tibial nerves across the ankle joint and the right is 5.8 milliseconds latency and the left 6.0 milliseconds latency and these are normal conduction latencies.
>
> I have injected this area with Xylocaine and Cortisone and told him to return to me in about a month and if his symptoms persist, we may consider another block or eventually posterior tibial nerve decompression in this region."

The letter is as follows:

> "RE: Luther Giles
> Duke No. H9 2 791
> C-512-16227

Dear Mr. Parker:

> I will try to answer your questions about Mr. Giles' foot. If the surgery is necessary on Mr. Giles' foot, and I hope that it is not, he should have no permanent partial dis-

ability following surgery. This would amount to decompressing the nerve which is causing his symptoms. However, it is hoped that this will subside following my last injection and quite often subsides without any treatment.

If surgery is necessary, he would have to spend about five days in the hospital and would lose no more than 2 weeks of work and possibly only about 10 days.

In other words, this requires a skin incision about the ankle, freeing up the nerve and application of a dressing about the ankle for about a week. The sutures could be removed in about 10 days."

On 25 July 1972, Deputy Commissioner Barbee filed his award. The Deputy Commissioner, in the award, set out as one of the stipulations of the parties:

"8. That the questions involved in this hearing is (sic) the amount of disfigurement and the increase in permanent partial disability of the plaintiff's right upper extremity."

He awarded $1,000 for disfigurement to the head and face, $150 for disfigurement to the body, compensation based on a 15% increase of permanent partial disability to the claimant's right upper extremity, and an attorney's fee of $700. On 31 July 1972, Commissioner Barbee filed an amendment to the order by which the award for disfigurement to the head was amended to $2,000 and the attorney fee amended to $900.50. Claimant, in apt time, filed application for review by the Full Commission. He assigned as error the failure of the Commissioner to describe in detail claimant's disfigurement and the Commissioner's failure to take into consideration, with respect to the disfigurement, "the receding hair of the employee". For those reasons, claimant contended on appeal that the conclusion of law awarding $2,000 was contrary to the fact and grossly inadequate and the award itself was contrary to the law and the facts. The application for review further stated:

"All grounds for appeal not specifically set forth herein are hereby specifically waived and abandoned except as otherwise provided by law and the rules of the Industrial Commission."

On 15 February 1973, the Full Commission entered an order, which, in essence increased the disfigurement award to $2,500 and reduced counsel fees to $500, struck the provisions

of the order of the Deputy Commissioner with respect to the right upper extremity, ordered that claimant be examined by Dr. Urbaniak "for the purpose of determining what amount of additional permanent partial disability, if any, this physician finds the plaintiff now has with reference to his right upper extremity". The matter was referred, after the taking of Dr. Urbaniak's evidence, back to the Full Commission "for such orders as it may deem appropriate at that time".

On 28 August 1973, the evidence of Dr. Urbaniak was taken before Commissioner Stephenson. At that time on direct examination by counsel for claimant, Dr. Urbaniak stated that in October 1970, when he rated claimant, he did not give him any permanent partial disability of the right foot but did on 25 May 1973 (the date of the examination ordered by the Full Commission) give him 10% disability of the right foot. On cross-examination the doctor stated that "a good portion of his note of December 18, 1970 involved evaluation of this foot problem". This was the evidence introduced at the hearing of 11 July 1972.

On 24 October 1973 the Full Commission entered its order reinstating the award based on "15% increase of permanent partial disability to plaintiff's right upper extremity" and approved an additional $400 counsel fee.

Claimant excepted to the Commission's failure to find 10% permanent partial disability of the right foot and to make an award based thereon, and on 2 November 1973, clamiant, on the same grounds filed a motion to reconsider asking that the Commission make an award for 10% permanent partial disability of the right foot and that the Commission approve attorney fee contract of 25% of award made by claimant with counsel.

The Commission denied the motion as to the award for permanent partial disability of the right foot but allowed it as to counsel fees. Claimant appealed.

*John J. Schramm, Jr., for claimant appellant.*

*No counsel contra.*

MORRIS, Judge.

Claimant's sole question on appeal is whether the Industrial Commission erred in failing to make findings of fact based on evidence relating to the issue of permanent partial disability of the claimant's right foot.

Claimant relies on *Thomason v. Cab Company*, 235 N.C. 602, 70 S.E. 2d 706 (1952), as supporting his position that this matter must be remanded for findings of fact. It is true that the Court held that matters before the Commission must be remanded if the findings of fact are insufficient to enable the Court to determine the rights of the parties. The Court used limiting language, however, which we think is significant and applicable to the situation before us. Justice Ervin, writing for the Court, said:

> "If the findings of fact of the Industrial Commission are supported by competent evidence *and are determinative of all the questions at issue in the proceeding,* the court must accept such findings as final truth, and merely determine whether or not they justify the legal conclusions and decision of the commission. (Citations omitted.) But if the findings of fact of the Industrial Commission are insufficient to enable the court to determine the rights of the parties *upon the matters in controversy,* the proceeding must be remanded to the commission for proper findings. (Citations omitted.)" *Op. cit.* at 605. (Emphasis supplied.)

Unquestionably, the Industrial Commission has jurisdiction to determine all questions of compensable injury *which are properly before it.* Here, claimant stipulated at the 11 July 1972 hearing that the issue before the Commission was "disfigurement and the amount of permanent partial disability to the arm". We have to assume that claimant knew and was aware that he intended to introduce into evidence and did introduce into evidence statements of Dr. Urbaniak with respect to the injury to the right foot. When the Hearing Examiner filed his award, claimant did not except to his setting out in the award the stipulation of the parties that "the questions involved in his hearing is (sic) the amount of disfigurement and the increase in permanent partial disability of the plaintiff's right upper extremity". Claimant appealed from the award, and his basis for appeal was that the award for disfigurement was inadequate. He specifically stated in his notice of appeal that all other grounds for appeal were waived and abandoned. The Full Commission entered its order on 15 February 1973 and, on its own motion, ordered an examination of claimant by Dr. Urbaniak for the limited purpose of determining what amount of additional permanent partial disability, if any, claimant had with respect to his upper right extremity. On Dr. Urbaniak's

evidence, the Commission affirmed the Hearing Examiner's award. Dr. Urbaniak again testified with respect to the right foot. On cross-examination, he readily conceded that a "good portion of his note of December 18, 1970 involved evaluation of this foot problem". The 18 December 1970 note was, of course, written some 20 months prior to the hearing from which claimant appealed and at which he never mentioned any injury to or resulting disability to his right foot. It was not until 2 November 1973 that claimant brought up the alleged injury to claimant's right foot. This was done by way of motion to reconsider asking that the Commission make an award for 10% permanent partial disability of the right foot. This came at a time when all the evidence was in. Employer had had no prior notice of claimant's claim in this respect and had had no opportunity to defend. Under the circumstances, it seems clear to us that claimant's motion was properly denied. It was a too late attempt to do what should have been done some two years or more prior thereto.

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.